# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:10-cv-00227-MR
# [Criminal Case No. 1:08-cr-00045-MR-1]

| | |
|---|---|
| STEPHEN RAYMOND BARBER, )<br>)<br>  Petitioner, )<br>)<br>  vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>  Respondent. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1] and the Government's Motion for Summary Judgment [Doc. 12].

## FACTUAL BACKGROUND

In early 2005, as part of an extensive investigation into the distribution of methamphetamine in Caldwell and Burke Counties, North Carolina, law enforcement officers learned about a group of individuals who were distributing methamphetamine obtained from Petitioner Stephen Raymond Barber. [Criminal Case No. 1:08-cr-00045-MR-1, Doc. 53 at 4: PSR]. In May 2004, Petitioner, who lived in Marietta, Georgia, began selling methamphetamine to various distributors in Caldwell County. [Id. at

4-5]. During 2004 and 2005, Petitioner engaged in numerous transactions with individuals in Caldwell County, frequently transporting methamphetamine from Georgia to Lenoir and other areas of Caldwell County. [Id. at 5].

As noted in the presentence investigation report ("PSR"), Petitioner's mother reported that during the time that she lived in Marietta with Petitioner, she observed him buying two large bags of methamphetamine, each containing three to four pounds, from a Mexican male. [Id.]. She also reported that Petitioner "always carried firearms while conducting drug transactions." [Id.]. Several individuals who purchased methamphetamine from Petitioner and ultimately distributed that methamphetamine in Lenoir provided information to investigators. One co-conspirator stated that for a three-month period in 2005, Petitioner made two trips a week from Atlanta to Lenoir, delivering five ounces of methamphetamine on each trip. [Id. at 6]. Co-conspirators consistently reported that Petitioner carried firearms during his transactions. [Id.]. Investigators determined that Petitioner was responsible for at least five kilograms of methamphetamine. [Id. at 7].

Petitioner was indicted by the Grand Jury for the Western District of North Carolina on April 1, 2008, and charged with conspiracy to possess with intent to distribute at least 1.5 kilograms of methamphetamine, in

violation of 21 U.S.C. §§ 841 and 846 (Count One); possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Count Two); and money-laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Three). [Id., Doc. 1: Indictment]. On July 7, 2008, Petitioner pled guilty pursuant to a written plea agreement to the drug-trafficking and firearm offenses (Counts One and Two), stipulating that he was responsible for at least 1.5 kilograms but less than 5 kilograms of methamphetamine. [Id., Doc. 51: Plea Agreement; Doc. 52: Acceptance and Entry of Guilty Plea].

During Petitioner's plea colloquy, this Court advised Petitioner about the maximum penalty he faced as to each of the offenses to which he was pleading guilty, and Petitioner affirmed that he understood that he faced a statutory mandatory minimum of 10 years in prison for the drug-trafficking offense and a consecutive five-year sentence for the firearm offense. [Id., Doc. 52 at 3-4]. Petitioner also affirmed that he was, in fact, guilty of the drug-trafficking and firearm offenses to which he was pleading guilty, and that he was satisfied with the services of his counsel. [Id. at 7, 9].

In preparation for Petitioner's sentencing hearing, the probation office prepared a PSR, calculating a total offense level of 35, which included a four-level leadership enhancement and a three-level acceptance of

responsibility reduction. With a total offense level of 35 and a criminal history category of II, the probation officer determined the advisory Sentencing Guidelines range to be 188 to 235 months as to the drug-trafficking offense. [Id., Doc. 53 at 8; 12]. The probation officer noted that Petitioner faced a mandatory minimum term of 60 months in prison, to be served consecutively, as to his § 924(c) firearm offense. [Id.].

In response to the PSR, Petitioner objected to the four-level leadership enhancement, stating that he did not direct or manage the activities of his co-conspirators and objected to the assessment of a criminal history point based on a juvenile conviction for possession of marijuana, arguing that the conviction did not occur within five years of his participation in the conspiracy offense.[1] [Id., Doc. 55 at 2: Objections]. In response to these objections, the probation officer noted that Petitioner organized and led the methamphetamine-distribution activities of at least six of his co-conspirators, negotiating the amounts to be sold, the location of the transactions, and how payments were to be made, and that evidence established that Petitioner began participating in the conspiracy in May

---

[1] Petitioner also objected to the determination that he was responsible for at least five kilograms of methamphetamine. The probation officer noted in the PSR that the evidence established that Petitioner bought, sold, and possessed at least five kilograms of methamphetamine, and that Petitioner entered a plea agreement stating that the amount of methamphetamine was at least 1.5 kilograms. [Id. at 15].

4

2004, within five years after his juvenile marijuana conviction. [Id., Doc. 57 at 16: Final PSR].

Before sentencing, the Government filed a motion for downward departure based on Petitioner's substantial assistance, seeking to have the Court depart by two offense levels as to Petitioner's drug-trafficking offense. [Id., Doc. 63 at 3: Gov't Mot. for Downward Departure]. At sentencing, this Court granted the Government's motion and sentenced Petitioner to 151 months of imprisonment as to the drug-trafficking offense, to be followed by a consecutive 60 months of imprisonment for his firearm conviction. [Id., Doc. 74: Judgment].

Petitioner appealed, and his counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967). On October 16, 2009, the Fourth Circuit affirmed this Court's judgment, stating that the court had "examined the entire record in accordance with the requirements of Anders and [had] found no meritorious issues for appeal." United States v. Barber, 333 F. App'x 740, 740 (4th Cir. 2009).

On October 12, 2010, Petitioner filed a timely motion to vacate his conviction, asserting claims of ineffective assistance of trial counsel. Specifically, Petitioner asserts that trial counsel Dennis Gibson: (1) failed to communicate regularly with Petitioner's following Gibson's appointment as

5

Petitioner's counsel; (2) failed to investigate adequately the charges against Petitioner or his role in the conspiracy; (3) joined Petitioner's co-defendants' motions without Petitioner's consent; (4) failed to provide Petitioner with a copy of discovery or "pertinent sentencing information"; (5) erroneously advised Petitioner that he could get a sentence of between three-and-a-half years to ten years if he pled guilty; and (6) failed to argue adequately his objections to the PSR. [Doc. 1 at 7-8].

On May 6, 2013, Respondent filed its Response and a Motion for Summary Judgment. [Docs. 11, 12]. On May 28, 2013, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the motion for summary judgment and explaining the requirement that he present his own evidence by affidavit or unsworn declarations. [Doc. 13]. Despite the Court's Roseboro order, Petitioner did not file a brief of affidavits in response to the Government's summary judgment motion.

In response to Petitioner's motion to vacate and in support of the motion for summary judgment, the Government has submitted an affidavit from Petitioner's trial counsel Dennis Gibson. In his affidavit, Mr. Gibson states that he "has no record that . . . [Petitioner] asserted his factual innocence." [Doc. 11-1 at 2: Gibson Aff.]. Instead, according to Mr.

Gibson, "mitigation was the focus [from] the very beginning." [Id.]. Mr. Gibson states that nine days after he was appointed, he advised Petitioner about the nature of the discovery against him by letter and that he and Petitioner "spent quite a bit of time" discussing the impact of his co-defendants' testimony should he proceed to trial. [Id. at 1-2].

Mr. Gibson also states that in the months leading up to Petitioner's guilty plea and plea colloquy, he and Petitioner corresponded and discussed "what [Petitioner] was looking at in regards to sentencing," depending on whether he agreed to accept a plea offer or decided to go to trial, and they "discussed the records that were being used against him and his co-defendants' testimony." [Id.]. With respect to Petitioner's potential sentence, Mr. Gibson states that he advised Petitioner that he faced a mandatory minimum of 120 months as to the drug-trafficking offense, as well as the fact that the sentence for the firearm offense would run consecutively to the sentence for the drug-trafficking offense. [Id. at 1].

Although Mr. Gibson states that he estimated that Petitioner's offense level would be a level 33 and that his criminal history category would be a II, he also advised Petitioner that he could receive a sentence of more than 230 months. [Id.]. With respect to the decision to enter a guilty plea, Mr. Gibson states that he reviewed the proposed plea agreement with

7

Petitioner and advised Petitioner that he could reject the agreement, but after he advised Petitioner of the possible sentences he could receive, Petitioner chose to accept the plea agreement. [Id.]. Addressing Petitioner's objections to the leadership enhancement and the criminal history point applicable to the juvenile conviction, Mr. Gibson states that while he argued these objections, Petitioner "never provided any concrete evidence to object to the use of his juvenile conviction." [Id. at 1-2]. Mr. Gibson also states that Petitioner did not seem "overly concerned" about the use of the juvenile conviction in his criminal history calculation. [Id. at 2].

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

c) Procedures.

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that burden, the non-moving party has the

burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56).

## DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that

11

necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22.

Before addressing each claim of ineffective assistance of counsel, the Court first notes that Petitioner does not contend in his motion to vacate that, but for counsel's errors, he would not have pled guilty and would instead have proceeded to trial. As Respondent notes, for this reason alone, any claims of ineffective assistance of counsel related to his decision to plead guilty are subject to dismissal. See Hill, 474 U.S. at 59. The Court further notes that since Petitioner did not file a response to the Government's summary judgment motion he is deemed to have abandoned his claims. See Crosby v. Gastonia, 635 F.3d 634, 637 n.3 (4th Cir. 2011). In an abundance of caution, however, the Court will address the merits of his claims. The Court does observe that, since he has presented no evidence opposing the summary judgment motion, Petitioner fails to present any evidence rebutting the assertions made in the affidavit submitted by trial counsel Gibson.

### 1. Failure adequately to communicate with Petitioner.

Petitioner first asserts in the motion to vacate that Mr. Gibson failed to meet with him to discuss the merits of the case against him, did not request from Petitioner any factual information which might have been helpful to Petitioner's defense, and joined in Petitioner's co-defendants' pre-trial motions without first explaining those motions to Petitioner. In his affidavit, Mr. Gibson makes clear that he communicated regularly with Petitioner, sending Petitioner a summary of the case against him only nine days after he was appointed as Petitioner's attorney and communicating in the months between his appointment and Petitioner's guilty plea through correspondence. Although Petitioner complains in the motion to vacate that Mr. Gibson did not ask Petitioner for any factual information about the evidence against Petitioner, Mr. Gibson states that he has no record of Petitioner ever asserting his factual innocence and that, instead, Petitioner's focus was on "mitigation." [Doc. 11-1 at 2]. Indeed, the evidence against Petitioner, as described in the PSR, was overwhelming.

Petitioner also complains that Mr. Gibson joined in the motions of his co-defendants without consulting Petitioner, but as Petitioner decided to plead guilty before those motions were adjudicated, he cannot show any prejudice that resulted from Gibson's decision to join in the motions brought

13

by Petitioner's co-defendants. In sum, Petitioner's contention that counsel did not adequately communicate with him is without merit.

### 2. Failure to interview co-conspirators.

Petitioner next asserts in the motion to vacate that Mr. Gibson never attempted to interview any of Petitioner's co-conspirators, whose statements are summarized in the PSR. Petitioner does not state what these witnesses would have said to Mr. Gibson that differed from the account of their statements in the PSR, however. Although Petitioner suggests that these interviews could have led Mr. Gibson to decide to file a motion to dismiss the § 924(c) firearm charge, he does not state which of the numerous co-conspirators who reported Petitioner's possession of a firearm during drug-trafficking offenses would have retracted his or her statement or suggest that each one of them would have done so. Moreover, as noted previously, since Petitioner pled guilty to the charges against him and, according to Gibson's affidavit, did not assert his factual innocence, counsel was not obligated to interview witnesses. In sum, Petitioner fails to show ineffective assistance of counsel based on Mr. Gibson's failure to interview certain witnesses.

### 3. Failure to provide discovery.

Petitioner next asserts that Mr. Gibson never provided discovery to Petitioner. While Mr. Gibson likely did not provide discovery directly to Petitioner — something counsel agreed not to do in order to receive a copy himself — Mr. Gibson makes clear in his affidavit that he reviewed the contents of that discovery in a letter sent to Petitioner shortly after Mr. Gibson was appointed. Petitioner has not explained what evidence he believes Mr. Gibson omitted, or how he was prejudiced by not having received a copy of the discovery himself. In sum, Petitioner fails to show ineffective assistance of counsel based on Mr. Gibson's failure to provide Petitioner discovery.

### 4. Failure to provide accurate estimate of possible sentence.

Next, Petitioner alleges that Mr. Gibson advised him that a sentence of three-and-a-half to ten years was within the realm of possibility, when counsel communicated Petitioner's opportunity to enter into a plea agreement with the Government, and that counsel never advised him that a sentence of 211 months was possible or that his sentence on the firearm offense would run consecutively to his sentence on the drug-trafficking offense. Mr. Gibson's affidavit and Petitioner's own assurances during his plea colloquy refute Petitioner's assertion that he was confused about the

15

possible penalties he faced. Mr. Gibson states unequivocally that he advised Petitioner that he could receive a sentence of more than 230 months, and Petitioner affirmed under oath during his plea colloquy that he understood the maximum sentence he could receive, as well as the fact that he faced a mandatory minimum of 60 months on the firearm offense that would run consecutively to the sentence on the drug-trafficking offense. As noted, Petitioner has presented no evidence on summary judgment, in the form of an affidavit or otherwise, to rebut Mr. Gibson's assertions in his affidavit that he advised Petitioner that he could receive a sentence of more than 230 months.

Additionally, as noted, while Petitioner states that he would not have entered into that particular plea agreement had he understood its consequences, he does not state that he would have instead proceeded to trial. Moreover, as Respondent notes, given that Petitioner received not only a reduction for acceptance of responsibility, but also a downward departure of three years below the bottom of the applicable Guidelines range for substantial assistance, he cannot credibly assert that he would have proceeded to trial had he been better informed. In sum, Petitioner fails to show ineffective assistance of counsel based on Gibson's advice to Petitioner regarding the potential sentence Petitioner faced.

16

### 5. Failure adequately to support objections to PSR.

Finally, Petitioner asserts in the motion to vacate that Mr. Gibson failed to support the objections to the PSR he presented on Petitioner's behalf. This contention is without merit. As the sentencing transcript establishes, Mr. Gibson argued against the leadership enhancement, arguing that although Petitioner transported methamphetamine to Caldwell County, he did not exercise managerial control over his co-conspirators and that the evidence summarized in the PSR did not support the enhancement. [Criminal Case No. 1:08-cr-00045, Doc. 87 at 3; 5-6: Sentencing Hrg. Tr.]. Although Petitioner suggests that Gibson should have presented evidence to refute the Government's argument in favor of the enhancement, Petitioner does not explain what evidence was available to present. Petitioner has offered only a bare allegation, therefore, and he has not shown that counsel failed to present evidence that was available to support his legal argument against the enhancement.

Petitioner also argues that Mr. Gibson failed to present evidence challenging the statement of Brenda Coats, summarized in the PSR, that Petitioner participated in the conspiracy as early as May 2004, within five years of Petitioner's juvenile marijuana conviction. Petitioner does not point to any evidence, however, refuting Ms. Coats' statement, and Mr.

17

Gibson states in his affidavit that Petitioner never provided any concrete evidence to support the objection Mr. Gibson filed on Petitioner's behalf to the use of that conviction.  Again, Petitioner has not produced any evidence on summary judgment rebutting the assertions made in Mr. Gibson's affidavit.  In sum, Petitioner fails to show ineffective assistance of counsel based on Gibson's alleged failure to support the objections made to the PSR.

## CONCLUSION

For the reasons stated herein, the Court will grant Respondent's motion for summary judgment and dismiss the petition.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).  As a result, the Court declines to

issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment [Doc. 12] is **GRANTED**, and Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: January 20, 2014

Martin Reidinger
United States District Judge